FILED

2006 Mar-20  AM 11:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **PETE E. MASSENGALE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action Number |
| v. | ) | **1:04-cv-03394-UWC** |
| | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| ***et al.,*** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This matter is before the court on the petition for a writ of habeas corpus filed by

the petitioner, Pete E. Massengale (hereinafter "the petitioner" or "Massengale").[1]  Upon

consideration, the court finds that the petition is due to be denied.

## BACKGROUND

Massengale is currently incarcerated at the Federal Correctional Institution in

Talladega, Alabama ("FCI Talladega").  (Ex. 1).[2]  He is serving an aggregate custodial

sentence of 71 months following his conviction for possession of equipment and or

chemicals used to manufacture methamphetamine and possessing a firearm after being

convicted of a felony.  (*Id*. at pp. 2-3; Ex. 2).  The petitioner has an expected release date

of April 13, 2008, via good conduct time release.  (Ex. 1 at 3).

The petitioner has filed the present petition pursuant to 28 U.S.C. § 2241, alleging

---

[1]The petition is located at document 1.

[2]The exhibits are located at document 4.

that he is entitled to an earlier release than that calculated by the BOP.  The court required

the respondent to appear and show cause why the requested relief should not be granted.

The respondent opposes the petitioner's claims, asserting that the petitioner has failed to

exhaust his administrative remedies and that he is entitled to no relief on the merits.

## FACTS

The petitioner was arrested by Tennessee state authorities and charged with

Aggravated Robbery on July 3, 2001.  (Ex. 3).  On August 30, 2001, a federal detainer

was issued for the petitioner.  (Ex. 4).  On September 11, 2001, the petitioner was

transferred from state custody to the United States District Court for the Eastern District

of Tennessee by the United States Marshals Service (the "USMS") pursuant to a federal

writ of habeas corpus ad prosequendum issued by that court.  (Ex. 5; Ex. 6).

The petitioner was convicted on the drug and gun charges and was sentenced to

serve 71 months to be followed by three years supervised release on May 10, 2002.  (Ex.

1; Ex. 2).  The court's judgment and commitment order is silent regarding the state

sentence.

On May 30, 2002, the petitioner was sentenced on a state robbery charge to a term

of three years incarceration to run concurrent with the federal sentence.  (Ex. 7).  The

state judgment also provided that the petitioner was to be awarded jail credit for the time

served from July 3, 2001, to May 30, 2002, affording him 331 days of jail credit.  (Ex. 7

& 8).

On December 10, 2002, the petitioner was paroled from the Tennessee Department of Corrections to the USMS detainer to begin his federal sentence. (Ex. 6 at p. 1). He was committed to BOP custody on January 8, 2003, upon his arrival at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"). (Ex. 1 at p. 2). The Tennessee Board of Probation and Parole requested that the BOP advise them if the petitioner was released prior to the expiration of his state sentence. (Ex. 9). On February 3, 2003, staff at USP Terre Haute reviewed his sentence and awarded the petitioner one day credit (for July 2, 2002), pursuant to 18 U.S.C. § 3585(b)(1). (Ex. 1 at p. 3 and Ex. 10). On March 4, 2003, Attorney Bryan H. Hoss (the petitioner's attorney), wrote a letter to the Regional Director of the North Central Region, and requested that the petitioner receive jail credit against his federal sentence. (Ex. 11). He requested that BOP contact the federal sentencing judge on behalf of the petitioner to request jail credit from the date of the state arrest. (*Id*.). On March 18, 2003, the BOP advised counsel that the petitioner must proceed through the Administrative Remedy Process for any relief. (Ex. 12).

On April 23, 2003, the petitioner submitted Administrative Remedy Request No. 296987-F1 to the institution requesting jail credit toward his federal sentence and designation of the Tennessee Department of Corrections as the place of imprisonment for his federal sentence. (Ex. 13). The petitioner was advised that the request for *nunc pro tunc* sentence designation had to be made to the Regional Director; thus, the request was denied by the Warden on May 12, 2003. (*Id*.). On June 6, 2003, the petitioner submitted

Administrative Remedy Appeal No. 296987-R1, requesting a *nunc pro tunc* sentence.

(*Id.*).  On June 10, 2003, the Regional Director advised the petitioner they would contact

the federal sentencing court regarding its intent concerning the operation of the federal

sentence.  (*Id.*).

On June 11, 2003, staff at the North Central Region contacted the sentencing judge

to ascertain his intent regarding whether the state and federal sentences were to run

concurrent.  (Ex. 14).  United States District Judge Curtis L. Collier advised the BOP that

it was his intent that the federal sentence not run concurrently with the state sentence.

(Ex. 15).  The BOP advised the petitioner that his request for a *nunc pro tunc* sentence

was denied.  (Ex. 16).

The petitioner made four attempts to file a Central Office Administrative Remedy

Appeal.  (Ex. 17).  Each of the appeals were rejected because the petitioner failed to

provide a copy of the Regional Director's response with his filing.  (*Id.*).  He was advised

each time to resubmit the appeal with the response included.  (*Id.*).  The petitioner never

complied with the direction of the BOP.  (*Id.*).

On October 25, 2004, the petitioner submitted another request for *nunc pro tunc*

sentencing.  On November 2, 2004, the request was denied based on the expressed

intention of Judge Collier that had been conveyed to the BOP.  (Ex. 18 & 19).

The petitioner filed the present action contenting that the BOP is denying him 10

months pre-trial jail credit and also is denying him credit against his federal sentence for

the six months he spent in state prison in violation of federal law and his due process

rights.  (Petition).  The petitioner further requests that this court order the BOP to grant

him 10 months jail credit and six months credit against his federal sentence for the time

spent in state prison.  (*Id*. at p. 6).  As already noted, the respondent asserts that the

petition is due to be denied because the petitioner has failed to exhaust his administrative

remedies.  It further asserts that it is due to be denied on the merits.

## DISCUSSION

The respondent initially asserts that the petitioner has not exhausted his

administrative remedies.  This defense is supported by the affidavit of Terry A. Collins.

(Ex. 17).  The petitioner counters that he has "substantially exhausted" his administrative

remedies.  (Response at p. 3).[3]

As correctly noted by the respondent, it is well established in the Eleventh Circuit

that an inmate must exhaust his administrative remedies before seeking relief in federal

court.  *Skinner v. Wiley*, 355 F.3d 1293 (11th Cir. 2004); *see also United States v.

Mitchell*, 845 F.2d 951 (11th Cir. 1988) (federal district court lacks jurisdiction over a

federal prisoner's petition for jail time credit when prisoner had not exhausted his

administrative remedies with the Attorney General).  Unless an inmate exhausts his

administrative remedies, the court is without jurisdiction to hear the claim.  *United States

v. Herrera*, 931 F.2d 761, 764 (11th Cir. 1991), *cert. denied*, 503 U.S. 972 (1992).

---

[3]The petitioner's response is located at document 5.

The BOP's Administrative Remedy Program, which applies to all inmates confined in institutions operated by the BOP, is set out in 28 C.F.R. § 542.10, *et seq*. The three-tiered review begins with the inmate filing a form that describes his complaint as well as his requested remedy. This form is formally filed at the institution where the inmate is confined. 28 C.F.R. § 542.14(c)(1) & (4). The Warden then responds to the inmate's formal complaint. If dissatisfied with the Warden's response, the inmate may appeal to the Regional Director. If dissatisfied with the response of the Regional Director, the inmate may appeal to the General Counsel. Appeal to the General Counsel is the final administrative appeal under the BOP's Administrative Remedy Program. 28 C.F.R. § 542.15(a).

The petitioner has failed to exhaust his administrative remedies because he never submitted a proper appeal to the Central Office despite repeated notifications by the Central Office of the defect in the petitioner's attempted administrative appeals. (Ex. 17). Therefore, the petition is due to be dismissed. To the extent that the petitioner argues that he lost the "original BP 10 response," the court finds that this did not excuse him from obtaining another copy to submit for further review. Additionally, to the extent he notes in his response that the BOP recognized that he lost the document, that does not excuse his failure to obtain another copy for review.[4]

---

[4]In an exhibit attached to his response, the petitioner notes that a BOP email recognizes that he lost the response and requests that a copy of the same be submitted by another BOP employee for review. (Response at Ex. B). Apparently, the response was not sent. Regardless, there has never been the requisite administrative review.

Even if the petitioner had exhausted his administrative remedies prior to bringing

the case at bar, the respondent correctly notes that the petition is still due to be denied.  A

federal sentence generally is calculated from the date on which a prisoner is delivered to

federal custody for service of the sentence.[5]  Additionally, "[a]s a general rule, where the

State has primary jurisdiction over a defendant facing both federal and state sentence, the

defendant must remain in state custody until the sentence has been fully served, at which

point he will be taken into federal custody to serve . . . his federal sentence."  *United*

*States v. Gonzalez*, 1998 WL 691080 at *2 (S.D.N.Y. 1998).  In *Gonzalez*, the court

further stated that

> it has been long settled that the "first sovereign to arrest a defendant has
> priority of jurisdiction for trial, sentencing and incarceration." [citation
> omitted].  This priority of jurisdiction remains in place until it is
> relinquished by, *inter alia*, "bail release, dismissal of the state charges,
> parole release or expiration of the sentence."

*Gonzalez*, 1998 WL 691080 at *2.

The petitioner was brought to federal court through the use of a writ of habeas

corpus ad prosequendum to resolve the federal charges against him.  This was necessary

because he was in state custody at the time.  After disposition of his federal offenses, he

was returned to Tennessee authorities for resolution of the state charges.  Thereafter, he

was sent by Tennessee authorities to state prison to serve his state sentence.  This was

---

[5]18 U.S.C. § 3585(a) provides:

> **Commencement of sentence**.  A sentence to a term of imprisonment commences on the date the defendant is
> received in custody awaiting transportation to, or arrives voluntarily at, the official detention facility at which
> the sentence is to be served.

necessitated by the fact that Tennessee had primary custody of the petitioner at the time

the federal charges were handled.  Tennessee's primary jurisdiction ended only when it

paroled the petitioner to the federal detainer on December 10, 2002.  (Ex. 1 & 6).

The fact that the petitioner was "loaned" to federal authorities for purposes of

addressing the outstanding federal charges did not change the fact that Tennessee retained

primary custody over the petitioner.  *See Causey v. Civiletti*, 621 F.2d 691, 693-95 (5th

Cir. 1980);[6] *United States v. Smith*, 812 F. Supp. 368, 370-71 (E.D.N.Y. 1993) (the first

sovereign's primary jurisdiction over the prisoner continues until it relinquishes its

priority by bail release, dismissal of the state charges, parole release, or expiration of

sentence).  In *Causey* the court wrote that "[t]he law is clear in this Circuit that, if a

defendant is in state custody and he is turned over to federal officials for federal

prosecution, the state government's loss of jurisdiction is only temporary."  *Causey*, 621

F.2d at 693; *see also Taylor v. Reno*, 164 F.3d 440, 444 (9th Cir. 1998), *cert. denied*, 527

U.S. 1026 (1999).

The fact that the petitioner went out on writ to the federal authorities for purposes

of addressing his federal criminal charges did not change Tennessee's primary

jurisdiction over him.  The respondent correctly notes that "[t]he judicial remand of the

petitioner to the custody of

 the United States Marshal was not a mittimus directing immediate execution of the

---

[6]Decisions of the former Fifth Circuit decided by September 30, 1981, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Pritchard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

federal sentence and the sentencing court's instruction to the United States Marshal was

accomplished when the petitioner was taken by the marshals back to the state (from

which he had been borrowed via writ) and a detainer placed on him so that he could serve

his federal sentences when his state sentences expired." (Reply at p. 12).[7]

Under the circumstances, the petitioner arrived in federal custody for service of his

federal sentence under § 3585(a) only after being paroled by Tennessee authorities.  The

BOP properly commenced the petitioner's federal sentence when he was received by the

United States Marshals on December 10, 2002.

To the extent that the petitioner asserts that the BOP improperly denied his request

for *nunc pro tunc* designation, the court disagrees.  Section 3585(b) provides as follows:

> A defendant shall be given credit toward the service of a term of
> imprisonment for any time he has spent in official detention prior to the date
> the sentence commences--
>
> > (1) as a result of the offense for which sentence was imposed; or
> >
> > (2) as a result of any other charge for which the defendant was
> > arrested after the commission of the offense for which the
> > sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585(b).  The petitioner  received 331 days pre-trial jail credit on his state

sentence.  Under § 3585(b), he received an additional day jail credit for time spent in

official detention prior to the date the sentence in the state case was imposed.

---

[7]The reply is located at document 4.

As noted above, the BOP does not recognize the start date of a federal sentence until the date the prisoner arrives at a Bureau prison. *See Weeks v. Fleming*, 301 F.3d 1175, 1179-80 (10th Cir. 2002). An inmate with both a state and federal sentence may request *nunc pro tunc* designation under the dictates of *Barden v. Keohane*, 921 F.2d 476, 483-84 (3d Cir. 1990). In the usual circumstance, an inmate's request is normally made when the federal court has not expressed its intent regarding concurrent sentencing.

BOP guidelines for *nunc pro tunc* sentencing are explained in Program Statement 5160.05, Designation of State Institution for Service of Federal Sentence. (Ex. 21). Under the guidelines, BOP will implement such a sentence upon the order or recommendation of a federal sentencing court or it will also consider a request from an inmate or state authority when the intent of the federal sentencing court is unclear. BOP will not allow a concurrent designation if the sentencing judge has already made a determination regarding the order of a federal and state sentence. If the court is silent regarding its' intent, the BOP is to ascertain whether the federal sentencing court has any objections. According to the respondent, BOP will not grant a *nunc pro tunc* designation if the federal sentencing court objects.

In this instance, Judge Collier made it clear in his letter that he wanted the petitioner's 71 month sentence to run consecutive to any state sentence. Thus, to run the federal sentence concurrent with the state sentence would be in direct contradiction with Judge Collier's direction. Accordingly, the petitioner is not entitled to the requested relief.

The petitioner is also not entitled to any additional credit against his federal sentence for the time spent in state confinement, either before or after his state conviction because 18 U.S.C. § 3585(b) only provides for custody credit "that has not been credited against another sentence." 18 U.S.C. § 3585(b). The petitioner received 331 days of jail credit against his state sentence, therefore he is not entitled to credit on his federal sentence for that time. The BOP correctly awarded him one day jail credit for the day that was not credited against his Tennessee sentence. He is entitled to nothing further.

To the extent that the petitioner argues that he is entitled to credit for the time spent in state facilities because he was denied bail because of the federal detainer (Petition at p. 6), he is incorrect. In support of this, he relies upon *Shaw v. Smith*, 680 F.2d 1104, 1106 (5th Cir. 1982), wherein the court stated that where "a state defendant is denied bail solely because of a federal detainer issued against him, the time spent in state custody awaiting trial must be credited to his federal sentence."

The petitioner's reliance on *Smith* is misplaced for a number of reasons. First, that rule is a general rule that does not control in the present circumstances because the petitioner (and the bondsmen) is incorrect in that the petitioner could have made a state bond and then be released to federal custody for a determination of his eligibility for release. However, if this had occurred, he would not have received the credits on the state sentence referenced above. Second, his state time was not the result of "federal law enforcement," but a consequence of a misunderstanding of the petitioner. *See United*

*States v. Hilton*, 925 F.2d 1458 (Table) (4th Cir. 1991) (credit required "only when state confinement has been the product of some activity by federal law enforcement so as to justify treating the state prison as the practical equivalent of a federal one").  Third, the petitioner received proper credit for that time on his state sentence.  He is entitled to no relief.

## CONCLUSION

Premised on the foregoing, this matter is due to be denied and dismissed with prejudice.  An appropriate order will be entered.

Done the 20th day of March, 2006.

_____
U.W. Clemon
Chief United States District Judge